UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

STANLEY DAVIS,

            Plaintiff,

v.                                            Case No.  5:05-cv-31-Oc-10GRJ

ROYAL BAHAMAS, ROYAL BAHAMAS
POLICE FORCE, FNU EDMUND, Constable,

            Defendants.
_____

### REPORT AND RECOMMENDATION[1]

This matter is before the Court *sua sponte*.  Because Plaintiff has filed a Motion to Proceed *In Forma Pauperis* (Doc. 3), the Court has authority to review the Complaint to determine whether it should be dismissed pursuant to 28 U.S.C. §1915(e)(2).[2]  In accordance with §1915(e)(2), the Court has reviewed the Plaintiff's Complaint (Doc. 2) and has determined that it is due, in part, to be **DISMISSED with prejudice** because the Complaint seeks monetary relief from Defendants who are immune from such relief.

### I. BACKGROUND & FACTS

Plaintiff has named three defendants in his Complaint, the Royal Bahamas, the Royal Bahamas Police Force ("Police Force"), and a Constable in the Police Force identified as Constable Edmund ("Edmund"). Plaintiff's complaint purports to allege

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] 28 U.S.C. § 1915(e)(2) provides, in part, that a court "shall dismiss [a] case at any time if the court determines that ... the action or appeal– (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

claims for violation of the Torture Victim Protection Act of 1991 ("TVPA") against each of the three Defendants.[3]  For purposes of this review, the Court accepts as true the facts as pled in Plaintiff's Complaint.

The Complaint discloses the following material details.  In May 1998, Plaintiff docked a luxury motor yacht in Cat Cay, Bahamas and disembarked for the purpose of purchasing fuel.  While attempting to acquire fuel, Plaintiff was refused service until such time as he spoke with the police.  According to Plaintiff, Constable Edmund approached him, then pointed a handgun at him and ordered him to lie face down on the dock.  While Plaintiff was lying prone on the dock, Constable Edmund allegedly stepped on Plaintiff's fingers and ground them with his foot.  Thereafter, Constable Edmund tied Plaintiff's hands behind his back with a rope and proceeded to kick and strike Plaintiff in the head with a handgun, while demanding that Plaintiff provide information regarding the location of guns, drugs, or other persons.  As a result, Plaintiff disclosed the location of a female companion aboard the yacht, who Constable Edmund then handcuffed, and directed her to lie on the dock next to Plaintiff.  Constable Edmund

---

[3] Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73 (1992), *reprinted in* 28 U.S.C. §1350 note.  The TVPA states in relevant part that "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to torture shall, in a civil action, be liable for damages to that individual . . . ."  Pub. L. No. 102-256, § 2, 106 Stat. 73 (1992).  The TVPA defines "torture" as "any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind . . . ."  Pub. L. No. 102-256, § 3, 106 Stat. 73, 73-74 (1992).

thereafter resumed kicking and striking Plaintiff with the handgun while demanding information. This conduct continued until Plaintiff lost consciousness.

Plaintiff was transported, by Constable Edmund, to the Island of Bimini, Bahamas. While in transit, Constable Edmund placed his handgun beside Plaintiff's head and discharged the firearm while simultaneously demanding that Plaintiff confess to crimes. Upon arriving in Bimini, the Police Force took custody of Plaintiff, who was hospitalized for treatment of his injuries. When Plaintiff was released from the hospital, the Police Force interrogated Plaintiff, with his hands cuffed behind his back. During the interrogation, Police Force agents allegedly slapped Plaintiff's face and threatened to slap his female companion if Plaintiff did not confess to crimes.

A few days later, Plaintiff was transported to Nassau, Bahamas, where the "abuse" continued until such time as he was again hospitalized for his injuries. Thereafter, a court in the Bahamas dismissed the charges against Plaintiff after which Plaintiff was "deported" from the Bahamas to the United States.

Plaintiff claims that, as a result of his treatment at the hands of the Defendants, he suffered bodily injury, physical and mental pain, and impairments to his abilities to walk and work.

## II. DISCUSSION

Under the provisions of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), a foreign state is generally immune from the jurisdiction of the courts of the United States.[4] A foreign state "includes a political subdivision of a foreign state or an agency

---

[4] 28 U.S.C. § 1604.

or instrumentality of a foreign state . . . ."[5]  An agency or instrumentality of a foreign state "is a separate legal person, corporate or otherwise," "which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof . . . ."[6]  An individual can be entitled to immunity under the FSIA as an agency or instrumentality of a foreign state if that individual is "acting in an official capacity."[7]  However, an individual is not entitled to immunity under the FSIA "for acts that are not committed in an official capacity."[8]

While the FSIA broadly grants immunity to foreign states, there are several specific exceptions to this general grant of immunity one of which is referred to as the "terrorism exception,"[9] added by the Antiterrorism and Effective Death Penalty Act of 1996, which amended the FSIA.[10]  The terrorism exception provides, with certain conditions, that a foreign state shall not be immune in a case "in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of

---

[5] 28 U.S.C. § 1603(a).

[6] 28 U.S.C. § 1603(b).

[7] Phaneuf v. Republic of Indonesia, 106 F.3d 302, 306 (9th Cir. 1997).

[8] Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1027 (D.C. Cir. 1997).

[9] 28 U.S.C. § 1605(a)(7).

[10] Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123, 1126 (D.C. Cir. 2004).

material support or resources . . . for such an act . . . ."[11]  However, for an act of torture to be considered sufficient for the terrorism exception to immunity to apply three additional conditions must be satisfied: (1) the foreign state was designated as a state sponsor of terrorism at the time the act occurred; (2) the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim; and (3) the claimant or the victim must have been a national of the United States at the time the act occurred.[12]

Plaintiff has named as Defendants in this action a foreign state (the Royal Bahamas), an agency of that foreign state (the Royal Bahamas Police Force), and an individual who is an agent of the Police Force (Constable Edmund).

The Court will first consider the applicability of FSIA immunity to the Royal Bahamas and the Police Force.  The Royal Bahamas and its Police Force, as an agency or instrumentality of a foreign state, are each clearly a "foreign state," as that term is defined in the FSIA.[13]  Thus, the Royal Bahamas and the Royal Bahamas Police Force are immune from the jurisdiction of this Court unless the terrorism exception to immunity applies.

The terrorism exception clearly does not apply to the Defendants in this action because the Royal Bahamas was not designated as a state sponsor of terrorism at the time of the alleged acts, which is one of the three requirements for the terrorism exception to apply.  The U.S. State Department's publication *Patterns of Global*

---

[11] 28 U.S.C. § 1605(a)(7).

[12] 28 U.S.C. § 1605(a)(7)(A)-(B).  See also Kilburn, 376 F.3d at 1126-27.

[13] See 28 U.S.C. § 1603.

*Terrorism:1998*[14] identifies Cuba, Iran, Iraq, Libya, North Korea, Sudan, and Syria as the only designated state sponsors of terrorism in 1998, the year the events alleged in Plaintiff's Complaint occurred.[15]  Because the Royal Bahamas was not designated as a state sponsor of terrorism at the time of the acts described in Plaintiff's Complaint, the terrorism exception does not apply to either the Royal Bahamas or the Royal Bahamas Police Force and, thus, both Defendants are immune from suit under the FSIA.[16]

As to Constable Edmund, while ultimately he may be entitled to immunity under the FSIA, as an instrumentality of a foreign state, the Court is unable to make that determination at this stage of the proceedings based on the bare bone allegations in the Complaint.  Whether Constable Edmund acted within the scope of his official authority or acted outside of the scope of his official authority granted him by the Royal Bahamas and the Police Force, is critical to the determination of whether Constable Edmund is immune from suit under the FSIA.  That determination cannot be made based only on a review of the Complaint.

---

[14] See U.S. Dept of State, Patterns of Global Terrorism: 1998 (April 1999), *available at* http://www.state.gov/www/global/terrorism/1998Report/1998index.html.  "Courts have expressly recognized that Patterns of Global Terrorism 'is an annual report highlighting worldwide patterns of terrorism, and reflects the formal and official position of the U.S. government with respect to responsibility for various terrorist acts.'"  Simpson v. Socialist People's Libyan Arab Jamahiriya, No. CIV.A. 00-1722(RMU), 2005 WL 517850, at *6 n.5 (D.D.C. Mar. 7, 2005) (quoting Dammarell v. Iran, 281 F. Supp. 2d 105, 111 n.6 (D.D.C. 2003)).

[15] Through the year 2003, the same seven states remained the only designated state sponsors of terrorism.  U.S. Dept. of State, Patterns of Global Terrorism: 2003 (April 2004), *available at* http://www.state.gov/s/ct/rls/pgtrpt/2003/.  However, in 2004, Iraq's designation as a state sponsor of terror was rescinded, leaving six states on the list of designated state sponsors of terror.  See Notices, Department of State, 69 Fed. Reg. 61702-02 (Oct. 20, 2004) (Secretary of State Colin Powell rescinds the determination that Iraq is "a country which has repeatedly provided support for acts of international terrorism.").

[16] See Samco Global Arms, Inc. v. Arita, 395 F.3d 1212, 1214 (11th Cir. 2005) ("If a foreign state is immune under the FSIA, courts of the United States lack both subject matter and personal jurisdiction in any suit against it.") (citing Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 611 (1992)).

However, even if Constable Edmund was not immune from suit under the FSIA, because his actions were committed outside of the scope of his official authority, the Court has serious concerns whether Constable Edmund - presumably a citizen and resident of the Bahamas - would be subject to the personal jurisdiction of this Court. The Complaint, as drafted, does not contain any allegations as to the minimum contacts between Constable Edmund and this Court. Because of this deficiency, if Plaintiff chooses to file an amended complaint against Constable Edmund the amended complaint should contain sufficient allegations establishing a basis for personal jurisdiction.

### III.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that:

(1) Plaintiff's claims against the Royal Bahamas and the Royal Bahamas Police Force be **DISMISSED with prejudice** because those two Defendants are immune from suit under the FSIA thus depriving the Court of subject matter jurisdiction;

(2) Plaintiff be directed to file, **within 20 (twenty) days** of the date of the Court's Order, an Amended Complaint alleging sufficient jurisdictional facts to establish personal jurisdiction over Defendant Constable Edmund, failing which Plaintiff's claims against Constable Edmund should be dismissed as well.

**IN CHAMBERS** in Ocala, Florida, on March 23, 2005.

GARY R. JONES
United States Magistrate Judge

Copies to:
The Honorable Wm. Terrell Hodges
Senior United States District Judge

*Pro se* Plaintiff