UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

STANLEY DAVIS,

Plaintiff,

v. Case No. 5:05-cv-31-Oc-10GRJ

FNU EDMUND, Constable, UNITED STATES OF AMERICA, UNKNOWN FEDERAL AGENTS

Defendants.

---

**REPORT AND RECOMMENDATION**[1]

This matter is before the Court *sua sponte* for review of the Amended Complaint, filed by Plaintiff. (Doc. 17.). Because Plaintiff, a prisoner at the Federal Correctional Complex at Coleman, has filed a Motion to Proceed *In Forma Pauperis* (Doc. 3), the Court has authority to review his Amended Complaint to determine whether it should be dismissed pursuant to 28 U.S.C. §1915(e)(2).[2] Additionally, because Plaintiff now seeks redress from the United States and federal law enforcement officers, the Court is required to screen Plaintiff's Amended Complaint in accordance with 28 U.S.C. § 1915A.[3] In accordance with §1915 and § 1915A, the Court has reviewed the Plaintiff's

---

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] 28 U.S.C. § 1915(e)(2) provides, in part, that a court "shall dismiss [a] case at any time if the court determines that ... the action or appeal– (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

[3] 28 U.S.C. § 1915A(a) reads, "The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Further, § 1915A(b) instructs the court to dismiss the complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

Amended Complaint (Doc. 17) and has determined that it is due to be **DISMISSED** because it is frivolous and fails to state a claim upon which relief may be granted.

## I. BACKGROUND & FACTS

Plaintiff originally filed a complaint in this action against three Defendants, the Royal Bahamas, the Royal Bahamas Police Force, and a Constable in the Police Force, identified only as Edmund ("Edmund"), alleging violations of the Torture Victim Protection Act of 1991 ("TVPA").[4] After review of Plaintiff's allegations in the original complaint the Court dismissed with prejudice (Doc. 16) the claims against the Royal Bahamas and the Royal Bahamas Police Force because those two Defendants were immune from suit under the Foreign Sovereign Immunities Act.[5] Plaintiff has now filed an Amended Complaint, renaming Constable Edmund, but also naming the United States and unknown federal agents as Defendants.

A review of the allegations in Plaintiff's Amended Complaint discloses the following material facts. In May 1998, Plaintiff docked a luxury motor yacht in Cat Cay,

[4] Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73 (1992), *reprinted in* 28 U.S.C. §1350 note. The TVPA states in relevant part that "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to torture shall, in a civil action, be liable for damages to that individual . . . ." Pub. L. No. 102-256, § 2, 106 Stat. 73 (1992). The TVPA defines "torture" as "any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind . . . ." Pub. L. No. 102-256, § 3, 106 Stat. 73, 73-74 (1992).

[5] 28 U.S.C. § 1604.

Bahamas[6] and disembarked for the purpose of purchasing fuel. While attempting to fuel the yacht, Plaintiff was refused service until such time as he spoke with Constable Edmund.[7] Edmund pointed a handgun at Plaintiff and ordered him to lie face down on the dock. While Plaintiff was lying prone on the dock, Edmund stepped on Plaintiff's fingers and ground them with his foot. Thereafter, Edmund tied Plaintiff's hands behind his back with a rope and proceeded to kick and strike Plaintiff in the head with a handgun, while demanding that Plaintiff provide information regarding the location of guns, drugs, or other persons. As a result, Plaintiff disclosed the location of a female companion aboard the yacht, who Edmund retrieved, handcuffed, and laid prone on the dock next to Plaintiff. Edmund then resumed kicking and striking Plaintiff with the handgun while demanding information, which continued until Plaintiff lost consciousness.

Plaintiff was transported, under the guard of Edmund, to the Island of Bimini, Bahamas. While in transit, Edmund allegedly placed his handgun beside Plaintiff's head and fired, simultaneously demanding that Plaintiff confess to crimes. Upon arriving in Bimini, the Police Force took custody of Plaintiff, who was hospitalized for treatment of his injuries. When he was released from the hospital, the Police Force interrogated Plaintiff, with his hands cuffed behind his back. During the interrogation,

---

[6] Plaintiff was in the Bahamas after robbing eight banks across the state of Florida and fleeing the country in a stolen luxury yacht, crimes for which he is currently serving sentences of imprisonment at the Federal Correctional Complex. See United States v. Davis, Case No. 98-617-CR-MIDDLEBROOKS (S.D. Fla.); and United States v. Davis, Case No. 98-230-CR-T-23(B) (M.D. Fla.). The Court takes judicial notice of the decisions and proceedings contained on the dockets in Plaintiff's two aforementioned criminal cases.

[7] Defendant, in his Amended Complaint, now alleges that Unknown Federal Agents somehow knew of Plaintiff's stop in Cat Cay and instructed Edmund to seize Plaintiff upon his arrival there.

Police Force agents slapped Plaintiff's face and threatened to similarly slap his female companion, if Plaintiff did not confess to crimes.

Within a few days, Plaintiff was transported to Nassau, Bahamas, where he continued to be "abused," until such time as he was again hospitalized for his injuries. Thereafter, the Bahamian court dismissed the charges against Plaintiff, and he was "repatriated" to this country. Plaintiff claims that, as a result of his treatment he suffered bodily injury, physical and mental pain, and impairments to his abilities to walk and work.

The Amended Complaint does not name the particular federal agents, who allegedly were involved in the investigation of Plaintiff's criminal activities nor does the Amended Complaint contain any allegations of how or in what manner the unknown federal agents personally participated in the arrest of the Plaintiff, other than the conclusory allegation that Constable Edmund arrested Plaintiff at the "behest and direction of the federal agents." With regard to the claims against the United States, Plaintiff has included the United States solely based upon its alleged vicarious liability for the actions of the unknown federal agents.

In the Order (Doc. 16) dismissing Plaintiff's claims against the Royal Bahamas and the Royal Bahamas Police Force, the District Court ordered the Plaintiff to file "an Amended Complaint alleging sufficient jurisdictional facts to establish personal jurisdiction over Defendant Constable Edmund, failing which Plaintiff's claims against Constable Edmund [would] be dismissed as well." Although, Plaintiff has included several conclusory allegations regarding Constable Edmund, the only jurisdictional allegations included in the Amended Complaint that suggest any contact between

Constable Edmund and the United States is the allegation that Constable Edmund testified in the criminal case in federal court, which led to Plaintiff's conviction.

## II. DISCUSSION

### A. Claims Against the Unknown Federal Agents

In his Amended Complaint, Plaintiff purports to assert *Bivens*[8] claims against an unknown number of unnamed federal agents for personal injury and torture. The Supreme Court's decision in *Bivens* provides a cause of action against a federal agent who, while acting under color of federal law, has violated the constitutional rights of an individual.[9] However, "it is well established in this circuit that supervisory officials are not liable under [*Bivens*] for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'"[10] "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation."[11]

In the instant case, Plaintiff has failed to allege any facts suggesting either that the unknown federal agents personally participated in or directed the use of force by Constable Edmund or that there is any causal connection with the alleged unlawful actions of Constable Edmund. Plaintiff's only allegation concerning the participation by the unknown federal agents is that on May 8, 1998 they "contacted Defendant Edmund

---

[8] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[9] Id. at 397.

[10] Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003)(citations omitted).

[11] *Id.*

on the Island of Cat Cay, which is located in the Royal Bahamas, and instructed him [Edmund] to seize Davis upon arrival in port."[12] There are no allegations that the federal agents instructed Constable Edmund to engage in the unlawful conduct. Simply because the federal agents requested Bahamian authorities to apprehend Plaintiff upon his arrival in the Bahamas, after fleeing the United States, is insufficient to raise a *Bivens* claim against the federal agents. Accordingly, Plaintiff's *Bivens* claims against the unknown federal agents are due to be dismissed for failure to state a claim upon which relief can be granted.

**B. Claims Against The United States of America**

Plaintiff also has named the United States as a defendant claiming that it is liable for his personal injuries and torture. However, constitutional claims for damages may only be brought against individual federal agents, not against the United States government itself because of sovereign immunity.[13] With regard to claims for damages based on tort, the United States is only amenable to suit for such damages under the limited waiver of sovereign immunity provided in the Federal Tort Claims Act ("FTCA").[14] Even under this limited waiver, the claims alleged by Plaintiff in the Amended Complaint cannot be brought under the FTCA for several reasons.

---

[12] Plaintiff also states in conclusory fashion, without any supporting facts or specifics, that the unknown federal agents "unlawfully endangered Davis' life, details of which are classified." In the absence of any allegations of what was done by the unknown federal agents, the Court is left to speculate about what is the basis of Plaintiff's claim. Although, Rule 8 of the Federal Rules of Civil Procedure only requires that the pleader set forth a "short and plain statement of the claim showing that the pleader is entitled to relief" Plaintiff's allegation that the agents "unlawfully endangered his life" without more is far short of satisfying the requirements of Rule 8 and fails to show that the Plaintiff is entitled to any relief.

[13] See F.D.I.C. v. Meyer, 510 U.S. 471, 484-86 (1994).

[14] 28 U.S.C. §§ 1346(b), 2671-2680.

First, although the United States has waived its sovereign immunity from suit in federal courts for certain torts of its employees,[15] a claimant cannot bring a claim under the FTCA against the United States, "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . ."[16] Plaintiff has not alleged that he has exhausted these administrative remedies. Accordingly, the Plaintiff is barred from bringing suit in federal court against the United States until he has exhausted his administrative remedies, thus mandating that the claims against the United States be dismissed.[17]

Secondly, the FTCA's broad waiver of immunity . . . is subject to several exceptions."[18] Among claims excepted from the FTCA are "[a]ny claim[s] arising in a foreign country."[19] "[T]he FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred."[20] All of the injuries Plaintiff allegedly suffered in this case, as well as all of the tortious conduct described by Plaintiff, occurred in the Bahamas, a foreign country. Accordingly, even if Plaintiff had exhausted his claims administratively, as a matter of law, Plaintiff's claims are not cognizable under the FTCA and thus the United States is immune from suit and the claims are due to be dismissed with prejudice.

---

[15] Mesa v. United States, 123 F.3d 1435, 1437 (11th Cir. 1997)..

[16] 28 U.S.C. § 2675(a).

[17] *See,* McNeil v. United States, 508 U.S. 106, 113, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993)

[18] Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997).

[19] 28 U.S.C. § 2680(k).

[20] Sosa v. Alvarez-Machain, 124 S. Ct. 2739, 2754 (2004).

**C. Jurisdictional Allegations Against Constable Edmund**

Lastly, as to the allegations against Constable Edmund, the only new allegations in the Amended Complaint are conclusory allegations Plaintiff has included in an effort to establish personal jurisdiction of the Court over Edmund. These allegations are, however, insufficient to establish any basis for personal jurisdiction over Constable Edmund as required by the District Court's Order.[21]

Jurisdiction "consistent with the Constitution and laws of the United States" is that which comports with due process. "Considerations of due process require that a non-resident defendant have certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice."[22] The nature and quality of these contacts, however, vary depending upon whether the type of personal jurisdiction being asserted is specific or general. Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint.[23] Minimum contacts sufficient to support specific jurisdiction are present only where it is established that the Defendant "purposefully avails [himself] of the privilege

---

[21] See Doc. 16, pg. 2 ("[T]he Plaintiff is directed to file, within 20 (twenty) days from the date of this Court's Order, an Amended Complaint alleging sufficient jurisdictional facts to establish personal jurisdiction over Defendant Constable Edmund, failing which Plaintiff's claims against Constable Edmund will be dismissed as well . . . .").

[22] Borg-Warner Acceptance Corp. V. Lovett & Tharpe, Inc., 786 F.2d 1055, 1057 (11th Cir. 1996), *quoting* International Shoe v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)

[23] Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Madara v. Hall, 916 F.2d 1510 n. 7 (11th Cir. 1990).

of conducting activities in the forum State, thus invoking the benefits and protections of its laws."[24]

General personal jurisdiction, in contrast, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state."[25]

Here, Plaintiff has failed to establish personal jurisdiction over Edmund because the Amended Complaint does not contain sufficient allegations of Edmunds's minimum contacts with this forum to satisfy due process either under either specific or general personal jurisdiction. The sole allegation relating to Edmund's contacts with the state of Florida is that Edmund "voluntarily appeared under subpoena in a court of this district to deliver evidence acquired during the torture at bar."[26] This allegation is insufficient to establish either specific or general personal jurisdiction.

The purported cause of action in this case relates to Plaintiff's treatment by Constable Edmund in the Bahamas, and not Plaintiff's criminal prosecution in this District. Because Constable Edmund's appearance at Plaintiff's criminal prosecution in this district has nothing to do with Plaintiff's claims against Edmund during the seizure in

---

[24] Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

[25] Consolidated Development Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000)(*citing* Borg-Warner, 786 F.2d at 1057).

[26] Plaintiff also asserts that Edmund has daily activity within the State of Florida, but he fails to allege any activities besides the single court appearance.

the Bahamas, these allegations are insufficient to establish specific personal jurisdiction over Edmund.

Further, the fact that Edmund testified in this District in the criminal prosecution against Plaintiff, is insufficient, as a matter of law, to establish the required minimum contacts for this Court to exercise general personal jurisdiction over Edmund. Isolated and limited contacts with a forum - including the appearance of an arresting officer at trial in the forum - are not the sort of general systematic contacts sufficient to sustain the assertion of general personal jurisdiction.[27] To subject Edmund to the general jurisdiction of this Court based on a single appearance in this state to testify at a witness at a criminal prosecution would offend traditional notions of fair play and substantial justice.

Pursuant to the District Court's Order Plaintiff was permitted a second chance to allege sufficient jurisdictional facts to establish that this Court could exercise personal jurisdiction over Edmund. This he has failed to do. Accordingly, Plaintiff's claims against Defendant Edmund should be dismissed for lack of personal jurisdiction.

## III. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's Amended Complaint (Doc. 17) be **DISMISSED** for failure to state a claim upon which

---

[27] *See,* Webber v. Michela, 633 F.2d 518 (8th Cir. 1980)(insufficient contacts to establish personal jurisdiction over police officers where Illinois police officers testified in Minnesota at defendant's criminal trial)(*per curiam*); *see also,* Hall 466 U.S. at 418 (merely purchasing materials, even if done regularly, is not contact sufficient to support personal jurisdiction); Sea Lift, Inc. V. Refinadora Costarricense de Petroleo, S.A., 792 F.2d 989, 993-94 (11th Cir. 1986)(holding meetings in the forum state to sign a boilerplate contract will not support jurisdiction); Johnston v. Frank E. Basil, Inc., 802 F.2d 418, 420 (11th Cir. 1986)(placing an advertisement in state and interviewing prospective employees in state at instigation of employee held to be insufficient to establish minimum contacts.).

relief may be granted, and the Clerk be directed to close the file and terminate all pending motions in this matter

**IN CHAMBERS** in Ocala, Florida, on June 6, 2005.

GARY R. JONES
United States Magistrate Judge

Copies to:
The Honorable Wm. Terrell Hodges
Senior United States District Judge

*Pro se* Plaintiff